IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DELMA BANKS, JR., <br>     Petitioner | § <br> § | |
| vs. | § <br> § | No. 5:96CV353 <br> JUDGE DAVID FOLSOM |
| NATHANIEL QUARTERMAN, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Divisions, <br>     Respondent | § <br> § <br> § | |

MEMORANDUM OPINION

On March 23, 2006, Magistrate Judge Caroline Craven signed a Report and Recommendation recommending that relief be denied in Petitioner Delma Banks, Jr.'s writ of *habeas corpus*. The Report and Recommendation found that Petitioner's *Brady* claim on the issue of an undisclosed pre-trial interview transcript of witness Cook was tried by implied consent in a federal proceeding, but also found that the transcript was not material under *Brady*. Both parties filed objections to the Magistrate Judge's Report and Recommendation, and on June 1, 2006, this Court held a hearing to address those objections. Under 28 U.S.C. §636(b)(1)(C), this Court will conduct a *de novo* review of the Magistrate Judge's recommended findings. Upon due consideration of the record, including the evidence produced at the hearing and the arguments of counsel, this Court adopts the Magistrate Judge's Report and Recommendation in part, and modifies it in part.

The facts and procedural history of this case are set forth in the Magistrate Judge's Report and Recommendation and will not be repeated here. The Court will address the parties' objections, beginning first with those of the Director.

The Director objected to the Magistrate Judge's recommended finding that Petitioner's unpleaded *Brady* claim was tried by implied consent during the federal *habeas* evidentiary hearing held June 7 and 8, 1999. However, the Director has not raised any new arguments in his objections that cause this Court to question the Magistrate Judge's findings on the implied consent issue. The Court agrees with the Magistrate Judge's determination that the questioning during the evidentiary hearing put the Director on notice of the Cook transcript *Brady* claim, that there was no objection to the introduction of the transcript, and that the Director had a fair opportunity to litigate the issue. In particular, witness James Elliott was questioned by Petitioner's counsel, the content of which clearly brought to light the subject of Cook's testimony being coached. In response, the Director provided Elliott an opportunity to explain the method by which law enforcement interviewed Cook, including how it is common for law enforcement to have a witness clarify comments made in an earlier statement to police. The Director's argument that the Cook pre-trial transcript was introduced as evidence to counter Petitioner's *Brady* claim that there was an undisclosed deal between Cook and law enforcement to drop pending charges against Cook, and therefore did not object to the evidence, continues to be unpersuasive. Accordingly, the Court will adopt the findings on the issue of implied consent in the Magistrate Judge's Report and Recommendation.

As for the recommended finding in the Magistrate Judge's Report and Recommendation that the Cook pre-trial transcript was not material, Petitioner objects that the Report approaches the materiality issue too narrowly. Petitioner argues that the Court should follow the Supreme Court's decision in *Kyles v. Whitley*, which requires a court to consider non-disclosed evidence collectively in determining whether there has been a *Brady* violation. Petitioner also objects on the basis that the Magistrate Judge refused to consider post-trial evidence in making a materiality determination. The standard for materiality is whether there is a reasonable probability of a different result had the prosecution disclosed the evidence. *Id*. at 434. A "reasonable probability of a different result" is shown when the suppression "undermines confidence in the outcome of the trial." *Id*.

At trial, the prosecution recognized Cook's testimony as "critical" in the case against Petitioner. Although there were several State witnesses who testified about aspects of the crime, Cook was the only witness to testify that Petitioner confessed to murdering the victim, as well as the only witness to give a motive for Petitioner committing the crime. Cook stated that one evening while Petitioner was staying at Cook's grandparent's house in Dallas, Petitioner confessed to killing the victim, stating that Petitioner said "he decided to kill the white boy for the hell of it." Cook's credibility as a witness, particularly in light of this significant testimony, was of utmost importance. The prosecution had to be concerned that the jury would believe Cook. Cook was an admitted drug user who had been to prison on two prior occasions, and at the time of trial, was in jail facing arson charges. Habitual offender papers were filed in the arson case before Petitioner's trial which meant, if Cook was convicted of arson, he would receive a very long prison sentence. Recognizing that a central component of the case depended

3

on the jury accepting Cook's testimony, the prosecution emphasized at closing argument that Cook "didn't hide anything from you . . .[he] brought you the absolute truth."

Upon careful review of the record, the Court concludes that the defense may have been able to cast significant doubt on Cook's credibility with the aid of the undisclosed pre-trial transcript.  Disclosure of the transcript would have made the prosecution's case weaker thereby making a different result reasonably probable.  The following circumstances support the Court's opinion.

Cook testified that he did not talk to anyone about this case prior to trial.  However, the transcript reveals that Cook did in fact have an extensive conversation with authorities just prior to his trial testimony.  The Director's assertion that Cook understood the question to mean did he speak to anyone outside of law enforcement about the case is unconvincing.  Defense counsel specifically asked Cook if Mr. Rafaelli, the District Attorney prosecuting the case, had "just put you on the stand, not knowing what you were going to testify to."  Cook responded, "That's what I'm telling you."  The prosecution not only allowed this erroneous testimony to stand uncorrected, it sponsored to the jurors during closing argument that Cook "didn't budge from the truth."

Cook also testified at trial that he was convicted of felony assault but that he could not remember who he had assaulted.  The transcript of Cook's interview conducted just days before trial reveals that Cook told authorities he had assaulted a school teacher.  The Director suggests that Cook meant that he forgot the name of the person he assaulted.  However, the assault victim's name is never mentioned in the pre-trial interview transcript, only that the victim was a school teacher.  While Cook could have forgotten the details this particular incident between the

time he was interviewed by law enforcement and he gave his trial testimony, the hand written "do not say" note in the margin of the transcript next to Cook's comment that he assaulted a school teacher makes Cook's trial testimony, and the Director's explanation, suspect.

In his April statement to police and his trial testimony, Cook stated that Petitioner killed the victim "for the hell of it." However, in the pre-trial interview, Cook stated that Petitioner told him he had killed the victim because he wanted his car. At trial, the victim's girlfriend testified that the car frequently needed a jump to get started. The transcript shows that the authorities interviewing Cook questioned him about the condition of the car, asking Cook whether he had problems getting it started. Cook said that he did have trouble starting it, and one time had to get it jumped. The authorities noted that this information was not in Cook's April statement. The authorities also pointed out the irony of Petitioner wanting the victim's car badly enough that he killed the victim for it.

The defense could have used the pre-trial transcript to further chisel away at Cook's credibility by exposing the manner in which the authorities interviewed Cook. When the authorities questioned Cook about the statement he gave to police in April, they pointed out Cook's inconsistent recollection of the events leading up to the statement noting, "Now, see you told me that you that they [sic] didn't tell you anything. They just put you in a room and told you to start writing and now you've come up with two or three things they've told you." The transcript shows that before he made the written statement, the authorities told Cook the day that the crime occurred, that Petitioner was wanted for murder, and that the victim was a white male. In going over his April statement, the interviewer pulls out portions he wants Cook to clarify, but in doing so, tells Cook "[y]our statement is obviously screwed up . . . your statement doesn't

5

make any sense . . the way this statement should read is . . . ." In fact, the interviewer consistently points out information that Cook gives about this dealings with Petitioner that are not in his April statement, in response to which Cook reveals that he "was a little scared . . . kinda thinking too fast."

Had the defense been able to cross-examine Cook on the suppressed statement, the defense may have persuaded one or more jurors to reject Cook's trial version of events. Several inconsistencies in Cook's testimony came to light in the transcript, and while each inconsistency by itself might not have had much impact on the case, taken together they had the potential to significantly effect the jurors' impression of Cook. *See Kyles*, 514 at 449 n.19 (noting combined effect of suppressed evidence). The transcript also demonstrates the interview tactics and demeanor of the authorities which very well may have swayed the jury into believing Cook's testimony was coached, and to ultimately cause the jury to distrust the prosecution. *See id*. at 443 n.14 (finding "implication of coaching would have been complemented by the fact that [witness's] testimony at the second trial was much more precise and incriminating than his testimony at the first . . . ."). Although he knew that Cook was testifying untruthfully when Cook stated that he did not speak to anyone about the case prior to trial and could not remember who he had assaulted, the District Attorney did nothing to correct Cook's testimony, and in fact, emphasized to the jury several times that Cook was an honest witness. *See Graves v. Dretke*, 442 F.3d 334, 341 (5th Cir. 2006), *petition for cert. filed*, 74 U.S.L.W. 3704 (U.S. May 31, 2006) (No. 05-1568) (although State's star witness made inconsistent statements in suppressed evidence, prosecution emphasized witness's consistency). The transcript could have provided the defense with strong evidence in support of an argument that Cook was not a credible witness. For these

reasons, the Court finds that the Cook pre-trial transcript is material. The combination of the importance of Cook's testimony to the case against Petitioner, the coaching by authorities revealed in the transcript, the otherwise unknown inconsistent statements, and the prosecution's failure to correct false testimony lead the Court to conclude "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435.[1]

      This Court hereby adopts the recommended findings of the Magistrate Judge's Report and Recommendation on the issue of implied consent, and modifies the recommended findings on the issue of the materiality of the Cook pre-trial transcript.

      **SIGNED this 19th day of October, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

---

[1] In *Banks v. Dretke*, 540 U.S. 668 (2004), the Supreme Court found State punishment witness Robert Farr's undisclosed paid informant status material, in part, because the prosecution (1) emphasized to the jury that Farr's testimony was "of the utmost significance" to show Petitioner was a future danger and (2) failed to correct Farr's false testimony and told the jury that Farr "ha[d] been open and honest with you in every way." The prosecution employed similar tactics in presenting the testimony of Farr and Cook.